[Crim. No. 2577. In Bank.—October 15, 1923.]

## THE PEOPLE, Respondent, v. MITSUSHIGE TAMBARA, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT OF BONDS—PAYMENT OF NOTE—EVIDENCE.—In this prosecution for embezzlement of certain bonds which were delivered to the defendant in connection with a promissory note in defendant's favor representing the amount of a loan by him to another, and which bonds were delivered by the owner thereof to the maker of said note with the understanding that they were to be pledged for said loan, the evidence was sufficient to show that the note in question was paid in full.

[2] ID.—BONDS—TITLE—PLEDGE—EVIDENCE.—In such prosecution, the evidence was also sufficient to warrant the jury in determining that the bonds were the property of the person who turned them over to the maker of the promissory note and that they were entrusted to the defendant as pledgee thereof in connection

———————

1. Existence of a trust in property embezzled, notes, 87 **Am. St. Rep.** 30, 37; **L. R. A.** 1915B, 442.

with said note, and that the acts of the defendant relating to the disposition of the bonds all occurred while they were in his possession solely by reason of their delivery to him as such pledgee.

[3] ID.—PLEDGE—SEPARATION OF BONDS FROM NOTE — ILLEGALITY OF ACT.—In such prosecution, the defendant, in separating the bonds from the note for which they had been pledged and in pledging them as collateral for a larger note of his own, exceeded his legal rights in the use of the bonds.

[4] ID.—POWER OF ATTORNEY—EFFECT OF.—In such prosecution, the fact that the defendant had procured from the maker of the promissory note a power of attorney authorizing the defendant "to make all contracts and do all other acts of a business nature except a conveyance of lands" did not extend defendant's rights beyond the purposes for which the power of attorney was given, namely, to furnish him with complete evidence of his right to transfer the bonds, but only under those circumstances and by those methods which pertain to the relation of pledgor and pledgee.

[5] ID.—EMBEZZLEMENT—EVIDENCE.—When the promissory note for which the bonds were pledged was paid and the defendant failed to comply with the demands made upon him for a return of the bonds, from that moment there existed a wrongful conversion amounting to embezzlement; and the subsequent act of the defendant in causing the same bonds to be repledged for an indebtedness of his own after having once before pledged them for his own indebtedness was in and of itself an embezzlement of the property of the owner thereof, in which property defendant had no remaining right or interest whatsoever, although he held it in possession as trustee for the owner, to whom it was his bounden duty to restore the same.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Harold Louderback, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. A. Montagne for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

CONREY, J., *pro tem.*—The defendant was charged with the crime of embezzlement, by an information filed in the superior court of the city and county of San Francisco, in

the charging part of which it was alleged that the defendant, on or about the ninth day of October, 1920, was entrusted by one F. Hachiyama with certain bonds issued by the Japanese imperial government, the property of said Hachiyama, and of the aggregate value of $1,350, and that the said defendant having then and there received said personal property as bailee, and while he was so entrusted and in the possession of said personal property, he did unlawfully, feloniously, and fraudulently embezzle and appropriate the same to his own use. To this information the defendant pleaded not guilty and was thereupon put upon trial before a jury, which returned a verdict of "guilty of the crime of felony, to wit, embezzlement by bailee as charged in the information." The defendant's motion for a new trial was denied and from the judgment which followed he prosecutes this appeal.

The contentions of appellant are that the evidence is not sufficient to prove that he was entrusted by Hachiyama with the bonds, or that Hachiyama was owner of the bonds, or that appellant disposed of the bonds while they were in his possession or without authority.

During the year 1920 appellant was engaged in the business of a merchandise broker in San Francisco. He had business relations with one Inouye, a retail provision dealer in Watsonville. Inouye had among his customers F. Hachiyama and one Mitsui, who were mutually interested in the business of raising and selling strawberries. In April, 1920, Mitsui applied to Inouye for a loan of $1,000. Thereupon Inouye negotiated by telephone with Tambara and secured the latter's consent to make the loan. Thereupon Tambara sent down to Inouye a promissory note for $1,000 payable eighty days after date to himself or assigns with interest at twelve per cent per annum. Accompanying this note was another document in the form of a general power of attorney to be also signed by Mitsui, constituting Tambara his attorney in fact "with full authority to make all contracts and do all other acts of a business nature except a conveyance of lands." These two documents were duly executed by Mitsui and were returned to Tambara together with the bonds, which were negotiable in form and transferable by bearer. These bonds had been delivered by Hachiyama to Mitsui with the understanding that they would be pledged

for this loan. Tambara, upon receipt of the note and bonds and on April 24, 1920, applied to the Anglo-California Trust Company for a loan of $1,100, offering his own note, payable in sixty days with interest at six per cent per annum. The loan was made, Tambara depositing as security therefor the said bonds received from Mitsui together with certain Liberty bonds of his own. Thereupon Tambara forwarded $1,000 to Inouye, who delivered the same to Mitsui.

[1] At this point we will consider appellant's contention that the evidence is insufficient to prove that Mitsui's note to him was paid in full on the fourth day of October, 1920, or at any time. From the evidence there is no doubt that Mitsui, through Inouye, sent checks which were paid and which were sufficient in amount to satisfy the Mitsui note. The amounts of these checks were paid to appellant or to Tambara Gumi, the name of the business house through which Tambara conducted his merchandising and brokerage affairs. An attempt was made by appellant to show that at least in part these payments were properly applied to indebtedness of Inouye to Tambara and not toward satisfaction of the Mitsui note. The evidence, as a whole, is conflicting upon this issue and under that condition, of course, the jury's determination of the fact is conclusive here.

The subsequent conduct of appellant tends to support the contention that the Mitsui note had been paid in full. According to the testimony of Inouye he instructed Tambara that those checks were for payment of the Mitsui note. Inouye further testified that after the last payment was made, and early in November, 1920, he called on appellant in San Francisco and, after first stating that the loan had been paid in full, asked for a return of the bonds which had been deposited as collateral; that in reply Tambara said that it was the proper thing for him to deliver the bonds but that they were placed in a certain safe deposit vault; that if Inouye would return on the following morning he would be ready to deliver them; on Inouye's return next day to Tambara's office, Tambara was absent; in fact, the bonds never were returned. In this connection it may be noted that in making his $1,100 loan at the bank, Tambara used the Hachiyama bonds, together with some other bonds,

independently as collateral to his own note without including the Mitsui note as a part of such collateral.

Appellant having failed to pay his note to the Anglo-California Trust Company, that company pressed for payment. Thereupon, and on the sixth day of December, 1920, appellant arranged with another broker named Koshland to advance $1,100 for the taking up of the trust company's loan, with the understanding that the bonds would be transferred to Koshland as security for the indebtedness of appellant to Koshland as created by that transaction. Koshland and appellant went together to the trust company, where Koshland paid over $1,100 to the trust company and at the same time appellant separately paid to the company the accrued interest due from him on the note. The bank then passed the bonds over to Koshland, but first took appellant's receipt therefor.

[2] The evidence of these transactions, which, in substance, is hereinabove stated, was sufficient to warrant the jury in determining that the bonds were the property of Hachiyama and were entrusted by him to appellant as pledgee thereof in connection with the Mitsui note, and that the acts of the appellant relating to the disposition of the bonds all occurred while they were in his possession solely by reason of their delivery to him as such pledgee. When he took the bonds to the Anglo-California Trust Company they were in his actual possession. When he caused them to be delivered over by the trust company to Koshland they were practically in his possession.

The only remaining question relates to the authority of appellant to pledge these bonds as security for his own debts after they had been received by him as pledgee in connection with the Mitsui note. "One who has a lien upon property may pledge it to the extent of his lien." (Civ. Code, sec. 2990.) If appellant in giving security for his note to the trust company had pledged the Mitsui note and together therewith had pledged the Hachiyama bonds as collateral annexed to that note he would have been acting strictly within his rights under this section of the code. [3] But in separating the bonds from the note for which they had been pledged and in thus using those bonds as collateral to his own larger obligation, he exceeded his legal rights in the use of the bonds. We are not concerned here with the

proposition, which may be conceded, that as to the trust company the pledge of the bonds to it was beyond successful attack. Appellant had been given possession of the bonds with all the indicia of ownership. Nevertheless as between him and his pledgor or pledgors his application of the bonds to his own separate use in excess of his rights as pledgee was an illegal conversion of the property. [4] The fact that he had procured from Mitsui a power of attorney in the general terms which we have quoted did not extend his rights beyond the purposes for which the power of attorney was given, namely, to furnish him with complete evidence of his right to transfer the bonds, but only under those circumstances and by those methods which pertain to the relation of pledgor and pledgee. For there is no evidence that any other relations or rights were contemplated by the appellant or by Mitsui or by Hachiyama except those incident to said $1,000 loan and note.

If it be at all material it might be conceded that on April 24th, when appellant used the bonds as collateral to his note to the trust company, he thought he was authorized so to do and expected that the bonds would again be in his possession through the payment of his note to the trust company at its maturity twenty days before maturity of the note of Mitsui to appellant. [5] But when the Mitsui note was paid and the appellant failed to comply with the demands made upon him for a return of the bonds, there can be no doubt that from that moment there existed a wrongful conversion amounting to embezzlement. When we add to this situation the fact that subsequently he caused the same bonds to be repledged to Koshland for an indebtedness of his own, created under the circumstances to which we have referred, that act was and in and of itself an embezzlement of the property of Hachiyama, in which property appellant had no remaining right or interest whatsoever, although he held it in possession as trustee for the owner, to whom it was his bounden duty to restore the same.

Judgment is affirmed.

Kerrigan, J., Lawlor, J., Waste, J., Seawell, J., and Wilbur, C. J., concurred.

Rehearing denied.

All the Justices concurred.