[Civ. No. 1438. Second Appellate District, Division One.—January 31, 1927.]

## THE PEOPLE, Respondent, v. JAMES L. STAFFORD, Appellant.

[1] CRIMINAL LAW — EMBEZZLEMENT OF STOCKS AND BONDS — APPROPRIATION OF PROCEEDS—EVIDENCE—VERDICT.—In a prosecution for embezzling certain corporate stocks and bonds belonging to the complaining witness, evidence that defendant had sold the stocks and bonds involved, under a power of attorney fraudulently obtained, authorizing him to act for the complaining witness and for her use and benefit, did not entitle defendant to an acquittal on the theory that he had not appropriated the stocks and bonds, but rather their proceeds.

[2] ID. — INSUFFICIENT EVIDENCE OF PARTNERSHIP — INSTRUCTIONS.— In such prosecution, there was no error in the trial court's refusal to give a requested instruction pertaining to an alleged partnership, where there was no evidence worthy of consideration that the complaining witness was ever a partner with defendant or that defendant intended to apply any of the proceeds of a sale, or loan of the property of the complaining witness, to any partnership venture.

[3] ID. — TITLE TO STOCKS AND BONDS—INNOCENT PURCHASERS— ESTOPPEL — EVIDENCE. —In such prosecution, although the complaining witness was estopped to contend, as against innocent purchasers, that title to the stocks and bonds did not pass, the state was not estopped to inquire into the circumstances of the transaction prior or subsequent to the execution of the power of attorney.

[4] ID.—POWER OF ATTORNEY OBTAINED THROUGH DECEIT—DEFENSES. In such prosecution, the defense that defendant's rights were controlled by the written power of attorney even though obtained by deceiving the complaining witness, was not available, it being based upon defendant's own wrongdoing.

[5] ID. — WITNESSES — ANSWER RESPONSIVE IN PART — MOTION TO STRIKE.—In such prosecution, it was not error to deny a motion to strike out the answer of the complaining witness concerning defendant's authorized use of her charge account at a store on the ground that it was not responsive to the question, where the motion was addressed to the entire answer, part of which was responsive.

(1) 20 C. J., p. 431, n. 45.   (2) 20 C. J., p. 489, n. 78.   (3) 20 C. J., p. 415, n. 51 New.   (4) 20 C. J., p. 424, n. 5.   (5) 16 C. J., p. 882, n. 9.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Edwin F. Hahn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. T. Aggeler, Public Defender, and G. A. Benedict, Deputy Public Defender, for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

YORK, J.—The defendant was convicted on the first count of an indictment, which first count charged him with the embezzlement of certain corporation stocks and Liberty bonds, "all of the aggregate value of $686.00." A motion for a new trial was made and denied, and the defendant has appealed from the order denying motion for a new trial, and from a judgment of conviction on the verdict.

[1] Appellant contends that he was given authority to sell the stocks and bonds by the complaining witness by a letter or power of attorney executed by her, and he claims that having been so authorized he was acting within the scope of his authority when he sold the bonds, and, hence, that there could have been no unlawful conversion of the property by him. But unfortunately for his contention, the letter or power of attorney executed by the complaining witness authorized him to act *for her and for her use and benefit,* and the jury could have found, and undoubtedly did find, that he obtained the possession of the property dishonestly, and obtained the power of attorney dishonestly, and did not intend to dispose of the property for her or for her use and benefit, but for himself and for his own use and benefit.

Reduced to plain terms, appellant's contention in effect is that because by this power of attorney he was authorized to sell the bonds and stocks, he could not be convicted of embezzling that property (which is the charge against him), even though he might have been guilty of embezzling the money obtained by selling that property. But the evidence was sufficient to warrant the jury in determining that the stocks and bonds had been entrusted to him for no further

purpose than that he might use them as collateral in borrowing money for use in a certain business; that he promised to return said stocks and bonds to the owner, Mrs. Meagher, when they had served that specific purpose; that he obtained the power of attorney by pretending that it was needed to enable him to use the stocks and bonds for said stated purpose; that instead of using the property for the purpose and in the manner authorized by the owner, defendant sold said property outright and decamped with the money. Under such facts, it cannot be maintained that there was not an embezzlement of the property entrusted to the defendant, or that the embezzlement, if any, must have been embezzlement of the money and not of the stocks and bonds. The transaction, the fraud, the crime, was single and inseparable, and included the very property which had been entrusted to the defendant. (Pen. Code, sec. 507.)

[2] There was no error in the trial court's refusal to give the requested instruction pertaining to an alleged partnership, or the requested instruction to acquit the defendant. There was no evidence worthy of consideration that the complaining witness was ever a partner with the defendant, or that he ever intended to form a partnership with her, or that there ever was a *bona fide* partnership such as defendant contended existed, and the evidence is not sufficient to establish that defendant ever intended to apply any of the proceeds of a sale, or loan of the property of the complaining witness, to any partnership venture.

[3] Appellant's contentions with regard to the alleged partnership, and the binding force of the power of attorney, are inconsistent in that, while he contends that the terms of the power of attorney should control, and that they cannot be varied by any oral stipulations, he himself endeavored to modify or change the terms of the trust imposed upon him, by contending that oral stipulations gave him further authority to deal with the property to promote the alleged partnership. While it is true that if the defendant sold the property, and the purchaser was innocent of the defendant's breach of trust, the complaining witness would be estopped to contend that the title did not pass, such a condition would have no significance as to appellant's obligation to the complaining witness. The state would not be estopped to inquire into the circumstances of the transaction, prior or

subsequent to execution of the power of attorney. (*People
v. Marlin,* 102 Cal. 558 [36 Pac. 952]; *People* v. *Tambara,*
192 Cal. 236 [219 Pac. 745].) **[4]** If we interpret the
position of appellant accurately, he seeks to show his inno-
cence of the charge by proving his own perfidy. He vir-
tually contends that he obtained the authority to do with
the property as he pleased, even though such authorization
was obtained by deceiving the complaining witness, making
love to her and promising to marry her, although he was a
married man, of which fact he kept her uninformed. In
*People* v. *Treadwell,* 69 Cal., at page 235 [10 Pac. 508], our
supreme court quotes Lord Mansfield: "No man shall set
up his own iniquity as a defense, any more than as a cause
of action." His position shows his guilty intent. Appel-
lant, among other things, wrote complaining witness, whom
he had fraudulently induced to consent to marry him:
"Anent the handling of your affairs, Billy dear, you will
have to give me a legal power of attorney to do this other-
wise it would not be lawful for me to transact any business
on your behalf." The time was set for the proposed wed-
ding and just before that time arrived appellant surrep-
titiously disappeared, and the complaining witness had
never been informed what he had done with her stocks and
bonds, and now in his defense he argues, "The written
document is controlling." In the face of all his fraudulent
scheming to obtain for his own use property of the complain-
ing witness without compensation to her, and his violation of
the terms of the trust, the court did not err in refusing to
instruct the jury to acquit him. In the case of *People* v.
*O'Brien,* 106 Cal. 104 [39 Pac. 325], cited by appellant,
there was no felonious intent and no deception. There is
undisputed testimony in this case sufficient to establish such
a continuous story of felonious intentions and deceptions on
the part of appellant, that it would be difficult to believe
that he had any honest purpose in any of his acts, either in
obtaining the property or the power of attorney.

**[5]** Many rulings of the trial court have been cited as
erroneous. We have reviewed them all, and the court may
have made some remarks of a slightly prejudicial nature.
In cross-examination of the complaining witness as to her
authorizing him to purchase on her account at a store, ap-
pellant's counsel asked of her, "And you told whatever Mr.

Stafford charged was all right?'' She answered, ''I told him that Mr. Stafford and I expected to be married on Saturday and that he was financially embarrassed temporarily; that I had given him right of my charge accounts. I went into the store the next morning and when I saw the list I realized that it was all wrong because there were many items of women's apparel and things.'' A motion was made to strike out the answer, that it was not responsive. The motion was denied. The last sentence was not responsive, but inasmuch as the motion pertained also to matter that was responsive, the court could not grant the motion in full without striking out the responsive matter. It was therefore not error, as it would have been if the motion had been to strike out the unresponsive portion only, definitely setting forth in the motion the unresponsive portion. Some rulings were made which were subject to criticism, but they were not prejudicial, because, while evidence was excluded, or admitted against objections which should have been sustained, the fact of the bad faith of the defendant would otherwise have been fully sustained by evidence which is not open to objection.

To review here separately all of those rulings objected to would have no useful purpose. The remarks of the trial judge excepted to, if omitted, would still have left facts which could not be refuted as establishing appellant's guilt beyond controversy. Therefore, there was no miscarriage of justice in the trial of this case.

Therefore, the judgment and order appealed from are affirmed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 1, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 31, 1927, the following opinion being then rendered thereon:

THE COURT.—The petition for hearing in the supreme court after judgment in the district court of appeal is denied. In denying said petition we do not wish to be con-

sidered as approving any language to be found in the opinion to the effect that the appellant should have been found guilty of embezzlement if he had formed at or prior to the time he acquired possession of the property, the felonious intent to convert the same to his own use in violation of the terms upon which it had been entrusted to him. Such language was not necessary for the decision of any question involved in this appeal and is an incorrect statement of the law applicable to the crime of embezzlement.