[Crim. No. 2618.   Second Appellate District, Division One.—December 11, 1934.]

THE PEOPLE, Respondent, v. ARTHUR E. SCHNEIDER, Appellant.

4

Arthur E. Schneider, *in pro. per.*, for Appellant.

U. S. Webb, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

HOUSER, J.—From the record and from an inspection of the respective briefs filed herein it appears that in two separate informations that were filed against him defendant was charged respectively with the commission by him of the crime of petty theft and the crime of grand theft; also, that preceding the respective dates when such offenses were alleged to have been committed, defendant had suffered a former conviction of a felony and had "served a term of imprisonment therefor in a penal institution". On his arraignment defendant "confessed" the correctness of such charge of "a previous conviction". (Subd. 1, sec. 1093, Pen. Code.) The said causes were "consolidated" for the purpose of trial thereof, and such trial having been had,— on the one charge, defendant was convicted of the crime of petty theft, and on the other, to wit, of grand theft, the jury disagreed as to its verdict. From the judgment that followed the conviction of defendant on the charge of petty theft, as well as from an order by which his motion for a new trial was denied as to such charge, defendant has appealed to this court.

As far as concerns the charge of petty theft, briefly the evidence adduced by the prosecution on the trial of the action, and upon which the jury had a right to found its verdict, shows that defendant was the owner of a patent on an article designated as "clear vision glass", for the proposed manufacture and sale of which he had associated himself with certain other individuals in an organization which was termed a "general partnership", capable of having added to it by associating "special" partners therewith. In accord with such arrangement, defendant sold an interest in the partnership to a Mrs. Stevens for which she

agreed to pay the sum of $750, and as security for such payment she deposited with defendant two certain bonds. On the reverse side of the written agreement of "subscription" entered into by the parties, the following so-called "counter agreement" was signed by defendant, to wit:

"This subscription is accepted in lieu of two (2) Straus Bonds as follows—No. 30456 Bond number 1658 $500.00, No. 130853 Bond number 670 $500.00.

"It is further understood that these bonds may be redeemed at any time upon the payment of the above amount on subscription. And it is further agreed that the market value of these bonds may be had at any time."

Regarding the negotiations that occurred between defendant and Mrs. Stevens, it was testified by one witness to the transaction, and corroborated by another, that Mrs. Stevens "finally consented to put those two bonds up as collateral, but they were not to be sold. He (defendant) was to allow her $1,000.00, the valuation on the bonds, and put them in his safe, and simply use them as collateral, but he promised faithfully not to sell them." According to the testimony given by a Mr. Hughes, within a few days after defendant had received such bonds from Mrs. Stevens, he sold one of them to Mr. Hughes for which he paid defendant $117. It also appears that before a sale of such bond would be recognized by a receiver who was in charge of the assets of the issuer of such bond, it was necessary that the delivery of the bond be accompanied by a certificate of ownership by the seller of such bond. At the time when Mrs. Stevens delivered the bond to defendant no certificate of ownership of such bond was either signed or delivered to defendant; nor did defendant deliver any such certificate to Mr. Hughes. But after defendant had sold the bond to Mr. Hughes and he had resold it to another person, Mr. Hughes procured from Mrs. Stevens the required certificate of ownership.

In connection with his first point that "the verdict was contrary to law", appellant repeatedly makes the several statements that the evidence established the fact that he was the owner of a patent for a "clear vision glass"; that he had a valid contract of partnership; that in the city of Chicago he was arrested for the commission of the offense of which he was convicted; that thereupon he waived extradition, but was not permitted to bring with him to Los Angeles

his books, blue-prints, etc. In that regard, at the trial the facts of the ownership by defendant of the patent, and that he was proceeding in apparent good faith to organize a company for the manufacture and sale of the patented article, were not only conceded by the prosecution, but, as well, it was declared by the trial court that "there isn't any contention that there was not any such an invention, . . . there is no dispute on the question. . . . " Nor was any evidence offered to the contrary of any of the other of such alleged facts. But it should be apparent that none of such facts, nor all of them combined, reach the point here presented by appellant. Although on the trial of the action, such facts may have had some materiality, the case against defendant did not depend upon the question of his good faith with reference to the ownership of the patent, nor upon how he had proceeded with reference to the organization of the company or partnership that was intended to produce the patented article. The other facts to which appellant has thus referred were wholly immaterial to any question of his guilt in embezzling the bond that belonged to Mrs. Stevens and which he sold to Mr. Hughes. Although some of the evidence presented by the prosecution was denied by defendant personally, the province of the jury was to determine what was the fact, and its conclusion thereon is binding upon this court. The evidence to which reference hereinbefore has been had was sufficient to sustain the verdict and the judgment. (*People* v. *Tambara,* 192 Cal. 236 [219 Pac. 745].)

Appellant complains of alleged misconduct of the trial court in each of two particulars, to wit: (1) That in response to a statement made by defendant in effect that on the trial of the action he would appear *"in propria persona"*, the judge said, "You have more nerve than I have."

(2) Because of "attitude and statements" made by the trial judge in connection with the failure of a certain witness to be present in court at the very instant when defendant wished him to give his testimony (although said witness did appear during the discussion that took place between defendant and the judge with reference to the absence of the witness).

As to the first of such specifications, defendant has failed to direct the attention of this court to the place in the record where such language may be found; nor, after dili-

gent search therefor, can this court discover it. But in any event, the matter is of trifling importance. Conceding its existence, it could not have affected the verdict that was returned by the jury. Regarding the other specification to which appellant has referred, after careful scrutiny of the record this court is unable to discover therein anything of a nature derogatory to defendant personally, or detrimental to his defense to the action. Such objections are trifling in character and can be of no avail to appellant.

Appellant further predicates prejudicial error upon the alleged misconduct of the deputy district attorney who appeared in behalf of the prosecution, in that in his opening statement to the jury he made certain alleged misstatements of facts which he said he expected to prove. In that connection, it first appears that at no time did defendant offer any objection to any of such criticised remarks. Moreover, that both at the opening and at the close, respectively, of his statement to the jury the deputy district attorney said: "I warn you that anything I say is not to be taken as evidence because you are only to take the evidence in this case, or in any case, from the lips of those who are sworn. . . . And I admonish you again that the things I have told you are not evidence, but are just those things which I expect to prove by competent evidence."

Appellant also claims that in such statement the deputy district attorney called defendant "a liar". An inspection of the remarks made by the deputy district attorney reveals that no such language was uttered by him.

Appellant further complains that because in the course of the trial the deputy district attorney procured certain jewelry from one of defendant's witnesses and thereupon introduced the same in evidence as an exhibit in the case, defendant was injured in not being able to present such evidence by his own witness in his own defense. Just how defendant could have been harmed by such incident is not apparent. As was said by the judge of the trial court at the time when defendant complained of the situation, neither side had any "monopoly" on any witness or on any evidence. Moreover, such evidence related entirely, not to the count upon which defendant subsequently was convicted, but to the count on which the jury disagreed as to its verdict. And the last statement is true also regarding certain other alleged misconduct of the deputy district at-

torney in "pointing out to the jury on the blackboard that the witness . . . had lost property worth several thousands of dollars". It may also be added that appellant has again failed to note in his brief any reference in the transcript to any such incident or circumstance, and that this court has been unable to ascertain the correctness of appellant's statement of fact in that regard; but it is manifest that none of appellant's specifications of misconduct by the deputy district attorney has any merit.

However, appellant urges that "the court erred in matters of law": (1) In "permitting" the deputy district attorney to make the remarks to the jury to which attention hereinbefore has been directed; (2) in "permitting" the deputy district attorney to take the jewelry from the witness; to which fact reference hereinbefore has been had; (3) by making certain statements in connection with the "chart on the blackboard"; which incident also hereinbefore has been noted; (4) by striking out certain testimony given by a witness (which related to the charge of grand theft only); (5) by refusing to permit defendant to draw a diagram on the blackboard that would represent "clear vision glass"; and (6) by making statements regarding the situation involved in the fact that a certain witness (with reference to the charge of grand theft only) was not immediately present in court when his attendance at that time was desired by defendant (although he later appeared and gave his testimony).

As to the first of such specifications, it should be clear that in advance of the happening of the incident the judge of the trial court could not know that the deputy district attorney would err in his opening statement to the jury regarding the existence of any given fact or facts; nor, even after having been made, whether the deputy district attorney could establish such facts. Regarding the remainder of such specifications, their immateriality to this appeal, limited as it is to an investigation of alleged errors that occurred with reference to the charge against defendant of petty theft, already has been pointed out herein. None of them is of any consequence, or even available to defendant on his appeal from the judgment here under consideration.

Appellant further contends that he "was denied due process of law" in that when arrested in Chicago he

was not permitted to bring with him to Los Angeles his books and blue-prints of his patent; that because he was in arrears in the matter of the payment of his room rent in Chicago, his landlord there declined defendant's request to send such documents to defendant; and that because of his inability to introduce such papers, blue-prints, etc., in evidence on the trial of the action, he was unable to show how he had disbursed the moneys that had come into his possession from the "sale" of the bond which was the subject of the charge on which he was convicted. But it is so plain that none, nor all of such alleged circumstances, even if true, could constitute "a denial of due process of law" that this court marvels at the suggestion made by defendant in that regard. There is nothing in the point that merits discussion.

Appellant further suggests that "the trial court was prejudiced toward defendant", with the result that defendant was convicted of the offense of which he was charged;—when, had the trial court been free from such prejudice, defendant might have been acquitted. In support of such contention, appellant relies upon the so-called "reprimand", and the "attitude and statements" made by the trial judge in connection with the temporarily absent witness, to which incidents reference hereinbefore has been had. But, as hereinbefore has had consideration by this court, the said so-called "reprimand" and the "attitude and statements", if at all available to appellant on this appeal, amount to nothing as affording a cause for a reversal of the judgment. Furthermore, an examination of the record herein leads this court to the conclusion that not only was the trial judge not at all prejudiced against defendant, but, to the contrary, that he was unusually kind to defendant and extended to him every reasonable courtesy and consideration due to him in the premises. The point thus presented by appellant is utterly lacking in merit.

In effect, appellant also claims that if he should be awarded a reversal of the judgment, on a new trial of the action he would be able to introduce in his behalf new and additional evidence which should have the effect of securing his acquittal. Of course, even if true that appellant has such evidence at his command and on a new trial could present it for the consideration of a jury impaneled to try his case, in the absence of a proper showing of such

proposed evidence in presenting defendant's motion for a new trial, this court may not consider this claim as affording a sufficient reason for making its order by which the judgment here under consideration would be reversed.

Both in his closing brief and in his argument before this court on the question of his appeal, appellant contends that on the trial of the action the *corpus delicti* of the charge preferred against him was not established in that it was not shown that the bond which he "sold" to Hughes was the same bond that he had received from Mrs. Stevens. But even though it be conceded (without being so decided) that no direct evidence to that effect was presented on the trial of the action, nevertheless the evidence is replete with facts from which many justifiable inferences might be deduced that would warrant such a conclusion. Throughout the trial, both by the prosecution and by defendant, the identity of the bond in question was clearly assumed. As his own witness, defendant did not deny the fact. In that regard he now merely denies that the transaction between him and Mr. Hughes amounted to a sale of the bond, and asserts that all he did in the premises was to borrow $117 from Hughes, and that he deposited the bond with him as collateral security for the debt thus incurred. In fact, in his argument before this court, defendant did not claim that the bond which he procured from Mrs. Stevens was not the identical bond that he sold to, or hypothecated with, Mr. Hughes.

Finally, appellant complains of alleged error in that on cross-examination of defendant he was asked if he had ever been convicted of a felony. Although by the terms of subdivision 1 of section 1093 of the Penal Code the rule is announced that when, in an indictment or information, a defendant is charged with "a previous conviction, and the defendant has confessed the same, the clerk in reading it shall omit therefrom all that relates to such previous conviction";—nevertheless, repeatedly it has been held by the appellate courts of this state that on the trial of an action, in the event that the defendant therein becomes a witness in his own behalf, on cross-examination, in order to test his credibility as such witness, it is proper to inquire whether theretofore he had ever been convicted of a felony.

This court is clearly of the opinion that defendant had a fair trial.

It is ordered that the judgment and the order by which defendant was denied a new trial be, and they are, affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 10, 1935.