[Crim. No. 4333.   Second Dist., Div. One.   Sept. 1, 1949.]

THE PEOPLE, Respondent, v. RICHARD E. SKEEN, Appellant.

Morris Lavine for Appellant.

Fred N. Houser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

DRAPEAU, J.—The prosecuting witness, Mrs. Edna H. Allen, is an elderly widow. Her daughter married a gentleman by the name of David A. Scott-Duns. The marriage was of short duration. While it lasted the widow trusted her son-in-law with a general power of attorney, with the idea that he would conduct all of her business affairs.

She even gave him a check for $3,000 for a Christmas present. This check was endorsed by and paid to the defendant Richard E. Skeen. This was in Illinois in 1945. In January of 1946 the mother, her daughter, and son-in-law came to Los Angeles. The defendant Skeen followed shortly thereafter.

A business proposition was suggested among the three parties, the defendant, the son-in-law and the widow. The defendant and the son-in-law represented they could make $40,000 a year with a tennis court and a shop in connection.

After several discussions relative to this project, an agreement was entered into among the three parties. This agreement was entitled "Certificate of Formation of Tennis Enterprises, a limited partnership, and/or Articles of Partnership of Tennis Enterprises, a limited partnership." The agreement recited that Mrs. Allen was to contribute $35,000, and to be a limited partner with 1 per cent interest in the net profits. Scott-Duns was to contribute $1.00, and the defendant, Skeen, $10,000. Each of the latter parties was to have 49½ per cent interest in the net profits. Mrs. Allen was to get 5 per cent on her investment, and to be repaid the $35,000 by annual payments of not less than 10 per cent from the net profits.

For the purpose of raising the money for her contributions Mrs. Allen sold corporate securities and insurance annu-

ities. The money from these assets passed through Scott-Duns and into two bank accounts in the name of Tennis Enterprises, upon which Scott-Duns and the defendant, Skeen, were empowered to draw checks. Thereupon Scott-Duns and Skeen proceeded to withdraw from these accounts all of the $35,000, without devoting one cent of it to the purposes mentioned in the agreement.

The defendant, Skeen, made his $10,000 payment to the "business" by withdrawing from the Tennis Enterprises account and purchasing United States notes. Then he borrowed from the bank $10,000, pledging the United States notes as collateral security, and thus made his "contribution."

These two men were indicted by the grand jury, and charged with one count of criminal conspiracy and four counts of grand theft. The defendant, Skeen, was brought to trial separately before a jury. He did not testify in his own behalf. He was convicted upon all of the counts; his application for probation was denied; and he was sentenced to the penitentiary.

The defendant appeals, and asserts: (1) That the verdict is contrary to the law and the evidence; (2) error in rulings on evidence; and (3) prejudicial comments by the trial judge.

1. During the trial and in defendants' opening brief, it was contended that the defendant could have been guilty of no crime, because the business arrangement was a partnership, and there can be no embezzlement of partnership funds. (*People* v. *Brody,* 29 Cal.App.2d 6 [83 P.2d 952].) A ready and complete answer to this contention is that the jury passed upon the bona fides of the partnership, and determined that there was none in fact. (*People* v. *Cravens,* 79 Cal.App.2d 658 [180 P.2d 453]; *People* v. *Stafford,* 81 Cal. App. 159 [253 P. 183]; *People* v. *Kelley,* 81 Cal.App. 398 [253 P. 773].)

2. Objection was overruled to the following question: "Q. By Mr. Arterberry: Now, I will ask you whether or not, about this time, December, 1945, keeping this date of this check in mind or shortly thereafter, in January of 1946, did you ever execute a power of attorney to your son-in-law, Mr. Scott-Duns?"

It is argued that this was error, having in mind the best-evidence rule. The question did not call for the text of the power of attorney, but only whether such a document was

executed. Therefore, the objection was not well taken. ■ Other objections have to do with rulings on leading questions designed to elicit facts of the alleged conspiracy. As to these rulings there was no error.

■ 3. Finally, counsel urge misconduct arising out of the following colloquy between court and counsel:

"MR. SMITH: Cross examine.

"MR. ARTERBERRY: If your Honor please, before going into the cross examination, would you instruct the jury that any conversation he had with Mrs. Allen with reference to any civil settlement, or purported civil settlement, has no bearing on the issues in this case.

"THE COURT: That is correct. It is not controlling on the State.

"MR. ARTERBERRY: No, sir.

"THE COURT: The State is interested in the prosecution of criminal cases, and what the desire of the individual is is of no moment, and I think perhaps you should draw up a proper instruction to that effect too.

"MR. ARTERBERRY: Very well, your Honor.

"THE COURT: There is no question that is the law, is there?

"MR. SMITH: No, your Honor, that is absolutely right.

"THE COURT: In other words, if I stole $10,000.00 from you and was indicted by the Grand Jury, and I saw you a week beforehand and gave you back your $10,000.00, I could still be prosecuted.

"MR. SMITH: The question, of course, if whether or not a crime is committed at a certain time, and anything subsequent to that has no bearing on it.

"THE COURT: Say I took a gun and held you up and stole your money from you without your consent and against your will, and I was indicted. That is what the evidence would show. And then later I met you and I said, 'Mr. Smith, I am sorry about that. Here is your $10,000.00.' That wouldn't affect the prosecution.

"MR. SMITH: Not at all. I think that is absolutely correct.

"THE COURT: I wanted to be sure that is the law. That is my view of it.

"MR. SMITH: I was a little surprised, your Honor. I wanted the evidence chiefly for the matter of——

"THE COURT: Surprised or not, it is a matter of record, and you may proceed."

It is hard to see anything in the remarks of the judge which could have prejudiced the defendant with the jury.

The only thing which may be drawn from them is a desire on the part of the judge to have an understanding with counsel as to rulings made during the course of the trial. Moreover, no objection to these remarks was made by counsel; and no assignment of misconduct was made. So, in any event, no error may be predicated upon them. (*People* v. *Galuppo,* 81 Cal.App.2d 843 [185 P.2d 335].)

The judgment is affirmed.

White, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 29, 1949.