*J. H. Tipton, solicitor,* contra.

### 3355. MORSE *et al. v.* THE STATE.

1. While the particular statutes creating and defining the offense of cheating and swindling or obtaining property under false pretenses relate specially to personal property, or that character of property which is subject to larcenous asportation, the provisions of section 719 of the Penal Code (1910) are broad enough to include real estate or any interest therein.

2. To constitute an offense under section 719 of the Penal Code (1910) it is only necessary to show that the owner of property of value was induced by deceitful means and artful practices to part with the possession thereof, and was thereby cheated and defrauded.

3. No error of law appears, and the evidence supports the verdict. There was no error in overruling the certiorari.

DECIDED JUNE 7, 1911.

Certiorari; from Greene superior court—Judge Walker presiding. February 27, 1911.

*George A. Merritt, George Gordon,* for plaintiffs in error.

*Joseph E. Pottle, solicitor-general, James Davison, Brown & Shipp,* contra.

HILL, C. J. The plaintiffs in error were convicted in the county court of Greene county on an indictment charging them with the offense of cheating and swindling. Their petition for certiorari was sanctioned by the judge of the superior court, and on the hearing was overruled. To the latter judgment they excepted.

The indictment (omitting formal parts) charges, that the plaintiffs in error "did falsely and fraudulently, and with intent to defraud Greensboro Co-operative Creamery Company, represent to said Greensboro Co-operative Creamery Company, and to T. C. Crawford, president of said company, that they were stockholders

of and largely interested financially in Rigbers Ice Cream Company, a corporation, that said Rigbers Ice Cream Company was capitalized at $20,000, all of which was fully paid in, and that said Rigbers Ice Cream Company was worth the sum of $20,000, and did, on the faith of said representation, induce said Greensboro Co-operative Creamery Company, whereby the plant of said Greensboro Co-operative Creamery Company, including its property, was leased to said Rigbers Ice Cream Company for the term of three years beginning April 1st, 1910, and was induced to turn over and deliver said plant and property to said Rigbers Ice Cream Company and to said F. H. Rigbers and A. Morse, representing said Rigbers Ice Cream Company; whereas, in truth and in fact, as the said F. H. Rigbers and the said A. Morse then and there well knew, said Rigbers Ice Cream Company was not then and there capitalized at $20,000, the capital stock of $20,000 was not paid in, and said Rigbers Ice Cream Company was not worth $20,000, nor any other like large sum. On account of said false and fraudulent misrepresentation said Greensboro Co-operative Creamery Company sustained loss in the sum of $1,000."

1. A demurrer was filed to this indictment, on the ground that the property alleged to have been procured by the false pretenses set out in the indictment was real estate, and was not within the purview of the penal statutes of this State defining the offense of cheating and swindling. It is urged with learning and ability that these statutes were intended to apply only to personal property and to protect the title of the owner thereof, and that they were never intended to apply to real estate or an interest therein, as this kind of property was not subject to larcenous asportation. In support of this view counsel cite the statute of 30 Geo. II, c. 24, which seems to be the first statute defining the offense of obtaining property by false pretenses, and the decisions in State *v.* Eno, 131 Iowa, 619 (109 N. W. 119), and People *v.* Cummings, 114 Cal. 437 (46 Pac. 284), wherein this question is elaborately discussed, and the conclusion reached that statutes of this character do not include real property, however general in terms, and were undoubtedly designed solely for the purpose of protecting personal property. It can not be doubted that these statutes originated in certain defects in the application of the laws against larceny, and from a failure of justice which frequently arose from the subtle

distinction between larceny and fraud. Although property might be obtained from the possession of the owner by the grossest character of fraud, it would not constitute larceny if in fact it was obtained by the consent of the owner; and it was to cure this defect that these laws, defining cheating and swindling or obtaining property by false pretenses, were enacted. It is also true that under the English decisions these statutes do not apply to real property, the reason being that this class of property could not be carried away and dissipated like chattels, and that, although the owner might be deprived of his landed estate by means of fraudulent practices and deceitful means, yet the property was bound to remain stationary and accessible to law, and the civil courts furnished ample protection; and it is also true that some of the American courts have followed this view of the law in the application of these particular statutes, and it may be that in this State the law as to the offense of cheating and swindling would not apply to one who by deceitful means and artful practices obtained title to the land of another, for the very simple reason that the land could not be taken away, and any contract of sale obtained by such illegal means could be set aside either in a court of law or equity. But we are not prepared to say that this principle would apply to a case of a lease, especially if that lease included, with the interest in the land, personal property. "A lease for a term of years is not a freehold estate, but a chattel." *Field* v. *Howell*, 6 *Ga.* 423; 8 Enc. Dig. Ga. Rep. 559. One who by deceitful means or fraudulent practices obtains from another a lease of property, and thereby possession of the property, especially where the lease includes personal property, may not only be in a position to deprive the owner of his use of the property for the term of the lease, but may utterly destroy its value to the owner.

Without extending further the discussion on this line (as we deem it unprofitable), we are clear that, under the broad language of the statute of this State under which this indictment was framed, it is not subject to a demurrer on the ground stated. Section 719 of the Penal Code (1910) provides that "any person using any deceitful means or artful practice, other than those which are mentioned in this code, by which an individual, or a firm, or a corporation, or the public is defrauded and cheated, shall be punished as for a misdemeanor." Now, this indictment alleges

that the defendants, by falsely and fraudulently representing that the Rigbers Ice Cream Company was a corporation with a capital stock of $20,000 fully paid in, did induce the Greensboro Co-operative Creamery Company to lease to the Rigbers Ice Cream Company its plant and other property with intent to defraud the Greensboro Co-operative Creamery Company, which in fact did subject the said company to a loss of $1,000. It is insisted that this general section of the code does not apply, that the indictment was framed under section 703 of the Penal Code (1910). We think the general section does apply, and that the indictment is properly framed on this section, and, if the allegations of the indictment are proved as set out, it would show a violation of this general section of the Penal Code.

2.  In the next place, it is said, in support of the demurrer, that at most it is charged in the indictment that the defendants by the false pretenses therein alleged obtained a three-year lease of the plant and property of the Greensboro Co-operative Creamery Company, and it is insisted that the law is well settled that to constitute an obtaining of property by false pretenses, the owner must have been induced by the false representations to part with the title of the property, and not merely with possession or custody. We do not think that the statute under which this indictment is framed is subject to such a limited interpretation. This statute is very broad in its language, and so explicit in its terms as to do away with any necessity for judicial interpretation. "Any person using *any deceitful means or artful practice,* other than those which are mentioned in this code, by which an individual, or firm, or corporation, or the public is defrauded and cheated shall be punished as for a misdemeanor." Under the language of this statute, if a person is induced by false and fraudulent representations which in character are deceitful or artful to part with the possession of his property, and the property, while in possession of the one who thus gains possession of it, is damaged or injured, the person so parting with the possession of his property would be defrauded and cheated to the extent of the damage or injury to the property. We do not think it necessary that the title to the property should be obtained to accomplish the fraud, but it would be sufficient if the possession was obtained for some length of time, and thus the opportunity was furnished for accomplishing the cheat or fraud.

If these defendants, by representing that the Rigbers Ice Cream Company was a corporation with a paid-up capital of $20,000, secured from the Greensboro' Co-operative Creamery Company its plant and its property, when in fact the Rigbers Ice Cream Company was never organized as an ice cream company and none of the stock had been paid in, and if this property, while in the possession of the defendants, was damaged and depreciated in value by their own unlawful use, could it reasonably be said that they did not violate the terms of this statute? It would be no defense to the criminal act that the lease thus obtained could be set aside in a civil action as having been obtained by fraud. If the allegations in the indictment are true, unquestionably the Rigbers Ice Cream Company, as lessee, was not entitled to the possession of the plant or property of the Greensboro Co-operative Creamery Company, and took nothing by the lease; but this did not destroy the criminal character of the acts of Rigbers and Morse, who, by the fraudulent representations described, obtained possession of the plant and property of the Greensboro Co-operative Creamery Company. We think the indictment was good as against the demurrer.

3. It is insisted that the allegations of the indictment are not supported by the evidence. First, it is said that no complete contract of lease was made between the two corporations, and that the paper claimed to be the lease was incomplete, in that it was understood at the time of its execution that Rigbers, who signed as president of the ice cream company, and Morse, who signed as secretary of said company, would not be bound by the contract until it had also been signed by Kirkpatrick, the treasurer of the company. But this is denied by the State. It is contended—and we think properly so—that the contract was complete and was binding upon both corporations when it had been signed by the presidents of both corporations and the property therein described had been delivered by the Greensboro Co-operative Creamery Company to Rigbers and Morse as representatives of the Rigbers Ice Cream Company.

4. It is also insisted by counsel for the plaintiffs in error that the president and secretary of the Greensboro Co-operative Creamery Company, who signed the contract, had no authority to make the contract for the Greensboro Co-operative Creamery Company; that to lease corporate property requires the formal action of either the

board of directors or the stockholders. This may be true as a legal proposition, but we think it wholly immaterial whether the contract was legal and binding upon the corporation or not. If the execution of the contract was one of the means adopted by the defendants to carry out their purpose of getting possession of the property of the Greensboro Co-operative Creamery Company, and if in fact they did get possession of the property by reason of this contract, although it may have been incomplete and imperfect in its execution, this defect in the contract would make no difference. The question is: Did the contract induce the Greensboro Co-operative Creamery Company, or the officers thereof, to turn over the property of the company to the accused as representatives of the Rigbers Ice Cream Company? In making an application of the evidence in the record to the allegations of the indictment, it is clearly shown that the representations charged in the indictment as being false and fraudulent were in fact made by the defendants to the officers of the Greensboro Co-operative Creamery Company; and it is equally clear that these representations were false, and that the Greensboro Co-operative Creamery Company was induced by these representations to deliver to the defendants the possession of its plant and property in Greensboro, and the judge was fully authorized to infer, from the falsity of the representations and the conduct of the defendants, that their purpose was fraudulent.

The only question that remains for consideration is: Was the Greensboro Co-operative Creamery Company defrauded and cheated by these false and fraudulent representations made by the defendants, which induced it to turn over its plant and property to them? Unquestionably the Greensboro Co-operative Creamery Company was deprived of the use of its property for several months, and this was a thing of value. The individual losses of the stockholders of the Greensboro Co-operative Creamery Company, in failing to get pay for the milk which they had furnished to Morse at Greensboro, can not be called the losses of the Greensboro Co-operative Creamery Company, although the contract contemplated that the Rigbers Ice Cream Company was to take the milk of these stockholders and pay for it; but the property of the Greensboro Co-operative Creamery Company was delivered into the possession of Morse and Rigbers at Greensboro in pursuance of this contract, which their false and fraudulent representations had induced, and the use of it

for some months lost to the creamery company. This property consisted of machinery which was damaged in its use by Morse, who had secured possession of it as the representative of the Rigbers Ice Cream Company. The evidence does not show how much in dollars and cents this loss amounted to, but it is clearly shown that there was some loss, in deterioration in the value of the machinery of the Greensboro Co-operative Creamery Company. The case was tried by a very able judge on both the law and the facts; jury having been waived. We do not find that he committed any error of law, and there is some evidence in the record to support his finding on the facts.

The testimony which it is insisted the judge illegally admitted, we think, was admissible, not only as illustrating the purpose of the defendants in making the representations which induced the making of the contract, but also as illustrating the financial condition of the Rigbers Ice Cream Company. The evidence objected to was clearly a part of the res gestæ of the transaction.

*Judgment affirmed.*