[Crim. No. 1137. Second Appellate District, Division Two.—March 6, 1925.]

## THE PEOPLE, Respondent, v. L. F. ROSE, Appellant.

[1] CRIMINAL LAW — PLEADING — INCONSISTENT CHARGES — INTENT — EVIDENCE—INSTRUCTIONS—VERDICT — ELECTION. — Where an information is in two counts, one charging the defendant with the crime of grand larceny, in that he unlawfully stole, took, and carried away a certain sum, lawful money of the United States, belonging to a designated person, and the other charging that he embezzled said sum of money, and there is some controversy as to when the defendant formed the intent to convert the money to his own use, and if he did so intend, and the jury, under appropriate instructions, finds defendant guilty of embezzlement, and by a separate verdict acquits him of the charge of grand larceny, there is no merit in his contention on appeal that the trial court erred in denying his motion that the district attorney be required to elect upon which count the prosecution would be based.

[2] ID. — EMBEZZLEMENT — EVIDENCE — VERDICT. — In this prosecution arising out of the appropriation by defendant of certain moneys paid to him by the prosecuting witness in connection with the purported sale to her of certain lots of land, the evidence was sufficient to sustain the verdict of the jury finding defendant guilty of embezzlement.

[3] ID. — REPUTATION OF DEFENDANT — ISSUES — EVIDENCE. — In such prosecution, it was not error to permit the district attorney to introduce evidence for the purpose of showing that the reputation of the defendant for truth, honesty, and integrity in the community in which he lived is bad, even though the defendant had not raised such issue.

[4] ID. — REPUTATION OF DEFENDANT — INSUFFICIENT FOUNDATION — WAIVER OF OBJECTION.—In such a prosecution, it was not error to refuse to strike out the testimony of certain witnesses who, when asked if they knew the reputation of the defendant for truth, honesty, and integrity in the community in which he lived, replied that it was bad, but each testified that he had not discussed his reputation with others or heard it discussed, where the defendant made no objection to the introduction of the evidence in the first instance, and, in making his motion to strike, he did not base it upon an alleged lack of sufficient foundation.

[5] ID.—CONTRADICTORY STATEMENTS—PROVINCE OF JURY.—APPEAL.— Where certain witnesses for the prosecution had made contra-

3.  See 28 R. C. L. 620.

dictory statements, but the jury was fully instructed in this respect, the appellate court (upon appeal from a verdict of conviction) cannot say that any construction which the jury placed upon minor conflicting details affected their verdict.

(1) 17 C. J., p. 287, n. 44, 47; 20 C. J., p. 488, n. 71. (2) 20 C. J., p. 486, n. 60. (3) 40 Cyc., p. 2594, n. 4. (4) 17 C. J., p. 56, n. 16, p. 59, n. 35, p. 71, n. 47. (5) 16 C. J., p. 760, n. 12.

APPEAL from a judgment of the Superior Court of Los Angeles County. Carlos S. Hardy, Judge. Affirmed.

The facts are stated in the opinion of the court.

Charles I. Rosin for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman, Deputy Attorney-General, for Respondent.

CRAIG, J.—The information in this case consisted of two counts, respectively charging that the defendant committed the crime of grand larceny, in that he unlawfully stole, took, and carried away the sum of $475, lawful money of the United States, belonging to a Mrs. Clara Reich; and that at the same time he embezzled said sum of money.

[1] Motion was made that the district attorney be required to elect upon which count the prosecution would be based, on the ground that each negatived the other, and that inasmuch as the defendant could not have committed both offenses by the same act, the jury should not be compelled or permitted to convict upon both counts, or to make the election. There was some controversy as to when the defendant formed the intent to convert the money to his own use, and if he did so intend, and the trial court denied the motion upon the ground that the jury should decide whether he intended to obtain the money without giving consideration therefor, or legitimately obtained the same and thereafter converted it to his own use, should the evidence warrant a conviction upon either count.

Section 954 of the Penal Code provides that an indictment or information may charge two or more different offenses connected together in their commission, or different statements of the same offense, under separate counts, and that

the prosecution is not required to elect between the different offenses or counts, though the court may in its discretion require that they be tried separately. The jury were instructed, at appellant's request, that the defendant could not be convicted upon both counts, and that if they believed him guilty at all, they should convict him on but one count. From the nature of the evidence, as will hereinafter appear, it was a serious question of fact as to whether appellant at first conscientiously interested the prosecuting witness in the transaction, or did so with intent to defraud her, and the citation of authority requiring the submission of all questions of fact to the jury is not necessary. Since the jury found him guilty of embezzlement, and by separate verdict acquitted him of the charge of grand larceny, we see no merit in appellant's assertion that error was committed in denying his motion.

[2] It is contended that the verdict is contrary to the evidence. It appears that appellant agreed that three lots in a tract known as the Val Halla Memorial Park, in Los Angeles County, should be sold to Mrs. Reich; that between the twentieth day of December, 1923, and the twenty-seventh day of March, 1924, she paid him various amounts of money aggregating $375; that on several occasions she asked for a contract, but was at each time informed by appellant that she was not entitled to one until she had paid him more money; Mrs. Reich finally consulted an attorney, who called appellant to his office, and after various consultations her counsel advised her to cease paying. Appellant was taken to the district attorney's office, and, after making a statement, was arrested.

The prosecuting witness testified that appellant represented to her that he held an option on three lots in Block F, or Section F, of said tract, belonging to a Mr. Dunley, which appellant desired to sell for $750; that he demanded $300 as a first cash payment, but that she paid him $150, which was all she had, and that he told her a contract for the purchase of said lots would be furnished her upon the payment of $100 more. She said that she made payments by check, noting thereon "Section F," "Val Halla Memorial Lots," or "From Dunley," and at times paying cash, receiving appellant's receipt, on which he noted "lots Mem-

orial Park on which I have option''; that she continued to press him for a contract, but that after she had paid him more that the additional $100 originally required, he still refused her a contract unless she pay him $100.    She further testified that about the middle of March appellant suggested that three lots in Section A be substituted for those at first agreed upon, that they belonged to the *same people*, but were worth more; that she consented to this change, believing that she was buying from Mr. Dunley, but that each time appellant mentioned price he increased the amount, at first from $750 to $875, then to $900; and that he finally informed her that these lots belonged to a Mrs. Archer, from whom he held an option.

In the meantime appellant has been subjected to a somewhat thorough quizzing by Mrs. Reich's counsel regarding Dunley lots, and it was testified that appellant admitted to him that he had no option from Dunley, that ''there is no Mr. Dunley; I just told her that,'' and that appellant declined to show any written option from Mrs. Archer, though he claimed to hold one.    Mrs. Archer testified that she gave appellant no option in writing; that on March 21st he requested that she permit him to sell her lots for $900, and that she loaned him her contract, to be exhibited to Mrs. Reich's counsel; that she was not inclined to sell her property, but that inasmuch as she had paid but $450 therefor, and appellant had agreed to obtain much more, payable $30 per month, she consented; that he told her he would have a new contract prepared, and would collect his commissions from the other party, but that she never saw this latter document.    Mrs. Reich's attorney also testified that appellant demanded $900, stating that his commission or profit was to be all he could obtain for the property in excess of $500; that he finally submitted a form of contract, which was introduced in evidence, reciting that $18.25 should be paid to the Osborne-Fitz-Patrick Finance Company at first, and the same amount in two consecutive monthly installments, and thereafter the sum of $390 should be paid Mrs. Archer; this instrument was not signed, and the witness said that appellant demanded $106 down, a part of which he claimed to be due himself.    The counselor also testified that he told appellant that there had been so much lying about the transaction

that he would not permit Mrs. Reich to proceed further, and that he called the matter to the attention of the district attorney.

A deputy district attorney testified that appellant admitted to him that "Dunley" was a ficitious name; Mrs. Archer testified that if there was any mention of $390 in the contract that "there must have been some mistake," and that she never received any money from appellant in the transaction.

The defendant took the stand and denied that he ever mentioned a man by the name of Dunley to Mrs. Reich, that he knew a person by that name, but did not know whether or not he owned lots in said tract, or that he was even in the city; that Mrs. Archer had requested him to dispose of her lots and that Mrs. Reich's attorney told him to bring the papers to his office and that he would turn the money over to him; he denied having ever represented to Mrs. Reich that she was buying lots in Section F, or in Block F, or that they were in any section, or block, but that he had a verbal option from Mrs. Archer to sell her lots, and that his compensation should be all over $500 that he might obtain for them.

The principal contention as to a lack of sufficient evidence to support the conviction is that it was immaterial whether the lots in question were the property of Dunley, or Mrs. Archer, or of some person unknown to appellant at the time of agreeing to sell them, so long as he should obtain them and ultimately furnish Mrs. Reich three lots in Val Halla Memorial Park; that the latter was interested only in buying three lots, and that she so testified upon the preliminary examination.

It is obvious from the evidence before us that regardless of the owner's name, appellant had no option on any of the lots when he collected payments aggregating $375 from Mrs. Reich. There being evidence of the falsity of appellant's statements regarding Dunley, representations concerning the latter's ownership were undoubtedly material, and might be taken by the jury as some evidence of appellant's criminal intent. They were justified in believing that he represented himself as being able to deliver three lots in section or block F, belonging to Dunley, and that he later admitted that there was no such person. He admits having received about

$400 from Mrs. Reich, and the evidence tends to show that he demanded $106 more, but there is not the slightest intimation in the record that anyone other than defendant L. F. Rose ever received a dollar of the money which he collected; the sole possibility of Mrs. Archer receiving any money arose from the provision of the draft of a proposed contract whereby Mrs. Reich would be required to pay her $390 three months thereafter, which Mrs. Archer said was not her agreement with appellant, but that she had been assured of a $900 consideration for her $450 purchase. Upon this state of facts the jury would be warranted in disregarding appellant's testimony, and if they did that they doubtless concluded that Mrs. Reich's money was converted by appellant to his own personal use; and even had they accepted as true appellant's intricate but novel recitation of details, which he repeatedly termed "explanations," the record is entirely silent as to any intention upon his part to devote her payments to any other purposes. He does not attempt to deny that he intended to keep her money, or to indicate to whom he believed it should be paid; and from the terms of his proposed contract and his own demands it would appear that Mrs. Reich would not only be required to pay Mrs. Archer, and the Osborne-Fitz-Patrick Finance Company, in full, but to contribute $106 more to appellant. If Mrs. Archer in fact agreed that he should receive $400 upon consummation of the sale of her lots, which she denied, such an understanding could not have arisen until after he had received that amount from Mrs. Reich, and it was procured by him when he was in dire straits to produce some sort of contract. This is true according to his own testimony.

[3] Two witnesses, asked if they knew the reputation of the defendant for truth, honesty, and integrity in the community in which he lived, answered that they did; asked what it was, they replied that it was bad, but each testified that he had not heard his reputation discussed. Appellant insists that it was error to deny his motion to strike this testimony, both because he had not raised the issue and because they had not heard his reputation mentioned by others in the community. He is clearly in error as to the first reason assigned. In *People* v. *Cowgill*, 93 Cal. 596 [29 Pac. 228], it was said that "evidence is not admissible to

prove that the character of a witness for truthfulness is *good,* unless the opposite party has tried to impeach him by showing that his general reputation is bad.'' (Italics supplied.)

[4] Appellant is in no position to urge that the answers should have been stricken out on the ground that the witnesses had not discussed the defendant's reputation with others, because he made no objection to the introduction of the evidence in the first instance. In making his motion to strike he did not base it upon an alleged lack of sufficient foundation, and it is elementary that he must inform the trial court of the true ground for objection or motion to strike in order to avail himself of it upon appeal.

[5] Appellant contends, further, that two of the witnesses for the people were impeached by the showing that they had made contradictory statements, but the jury were fully instructed in this respect, and since they were at liberty to disregard any portion of the testimony, we are unable to say that any construction which they may have placed upon minor conflicting details affected their verdict.

*Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578], is quoted by appellant, as holding that, ''A person taking goods which he honestly believes are his own, under a claim of title, is not guilty of larceny nor of embezzlement if the property is openly and avowedly taken under a claim of title preferred in good faith.'' Here again the jury were called upon to decide a question of fact as to the defendant's intent, but we fail to see how his actions could be reconciled with an honest belief upon his part that the money was his own, or the idea that any claim to it could have been made in good faith.

A motion was made that the case be dismissed, which motion was denied, and appellant assigns this as error, but we think the evidence amply sufficient to sustain the conviction, and we need not, therefore, discuss that point.

Other points attempted to be raised are equally untenable, and are unworthy of further discussion. We do not think there was prejudicial error in the proceedings below.

The judgment and order denying motion for new trial are affirmed.

Finlayson, P. J., and Works, J., concurred.