[Crim. No. 119.   Fourth Appellate District.—May 21, 1931.]

THE PEOPLE, Respondent, v. L. AILANJIAN, Appellant.

K. Kuyumjian for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

BARNARD, P. J.—The defendant was charged with grand theft, it being alleged that he unlawfully took the property of C. M. Kenneson, consisting of six tons of raisins of the value of $300. He was tried before the court without a jury and found guilty. This appeal is from the judgment and from an order denying a motion for a new trial.

It appears that the defendant was purchasing the land on which the raisins were produced from C. M. Kenneson, under a contract dated December 2, 1926. Among other things, this contract provided as follows: "It is understood and agreed that all crops of every kind, name, and nature produced upon said land shall be and remain the property of C. M. Kenneson during the full term of this contract and must at all times be sold in his name and that the payments hereinafter provided shall be by him deducted from the gross selling price of said crops and the remainder shall be paid to L. Ailangian, the buyer." The contract further provided that after the crops were sold and paid for to the vendor, said vendor should retain one-half of the proceeds, applying the same upon the purchase price of the land, and

should turn the remainder over to the vendee. It also provided that in case the same should be needed by the vendee, the vendor would advance to him not to exceed $200 during each harvesting season, the same to be used in caring for the crops, and to be deducted from the vendee's interest in the proceeds. On April 24, 1929, a supplemental agreement was entered into between the parties, changing the contract in two respects only. The first of these provided for the payment of a definite amount on November 21, 1930, and annually thereafter, and the second provided that if, in any year, it should be necessary for the vendee to borrow money on his share of the crop, and in the event the vendor did not desire to make such a loan during that year, the vendor would, upon the request of the vendee, waive his right to one-half of the crop for that year in favor of the vendee; in which event the vendee might borrow money upon a crop mortgage, which should be made to cover his interest in the crop for that one year only. In all other respects, the original contract was to remain in full force and effect. It appears that this defendant was in possession of the premises described in the contracts during the crop seasons of 1927 to 1930, inclusive; that he sold the raisins involved herein on or about October 11, 1930; and that an action was begun in the Superior Court of Fresno County on October 22, 1930, in which Kenneson sought to cancel the contract and quiet his title to the land. It also appears that the payment upon the purchase price of the land provided for in the contract for the year 1930 did not become due until November 21, 1930, and that the criminal complaint upon which this proceeding is based was filed on November 10, 1930.

At the trial of the action it was stipulated by the respective attorneys that the raisins in question were sold by the defendant and that this was done without the knowledge or consent of Kenneson. In spite of this stipulation, the defendant later testified that Kenneson had told him early in 1930 that the entire 1930 crop of raisins was his, and that he could dispose of it as he saw fit. This was denied by Kenneson, who also testified that he had received none of the proceeds from the sale of the raisins, although he had demanded them.

■ The appellant first contends that these raisins were not the property of Kenneson, it being argued that under the agreement Kenneson had, in effect, a crop mortgage as security for the payments due him, and further that this crop mortgage was released both by a refusal of Kenneson to loan $200 to the defendant during the season of 1930, and by the bringing of the suit to cancel the contract in October, 1930; it being insisted that this latter action revested the title to the crops in the defendant. Assuming, but not deciding, that the provisions of this contract, reserving title to the crops produced in the vendor and providing that all crops should be sold in his name, and providing what he should do with the proceeds, constituted a crop mortgage, the defendant is in no better position, as selling the property without the knowledge and consent of the other party would still constitute larceny or theft, under the provisions of section 538 and 490a of the Penal Code. While some conflicting evidence appears in the record on the question of the knowledge and consent of Kenneson to the sale of these raisins, the court resolved this question of fact adversely to appellant. Nor does the evidence show any release of the crop to the defendant by operation of law. ■ In reference to the claim that Kenneson violated his contract by refusing to make the loan of $200 during the season of 1930, the supplemental contract indicates that the amount of any such loan was changed from $200 to the amount that should be required. But the evidence fails to show a refusal on the part of Kenneson to make a loan of either $200 or of any other amount. The contract, as amended, provided that if Kenneson did not desire to make a loan upon the request of the defendant, he would, upon request, waive his right to make such a loan, and the vendee would be privileged to borrow the money elsewhere, giving a crop mortgage for one year only upon his interest in the crop. No evidence appears that Kenneson was requested to waive his right and permit a loan to be made elsewhere. On the other hand, it appears that early in the year 1930 the defendant asked Kenneson for a loan sufficient to meet his requirements for the season. The amount needed was figured out and papers were drawn with the understanding that Kenneson would loan him the amount required. However, these papers were never signed by defend-

ant, but without making objections or giving explanation, the defendant went outside and mortgaged the entire crop to a bank, the crop mortgage covering the crops for two years.

█ In reference to the claim that title to the crops was restored to the defendant by the suit to cancel the contract, it fully appears that this action was not filed until October 22, 1930, whereas the raisins were sold on October 11, 1930, at which time no effort to cancel the contract had been made. If any crime was committed by the defendant in selling the raisins, it was committed when they were sold, and no later occurrence could relate back to or change the nature of the act previously done. Whether or not an offense was committed by the defendant depends upon the situation existing at the time the raisins were sold. The cases cited by the appellant to the effect that after the vendor had begun an action to cancel the contract, he could not proceed to collect installments on the purchase price falling due at a later date, are not in point here.

It is next urged that no felonious intent upon the part of the defendant is shown by the evidence. █ It is first argued that it had been the custom of the defendant to sell the crops from this land in his own name, and that the court sustained an objection to the introduction of testimony going to prove that fact, and that this evidence was most material upon the question of intent. On the other hand, the record shows that when an attempt was made to bring out that fact, an objection made by the prosecution was overruled. Testimony was then admitted that in 1927 the defendant sold the crop of raisins, but that the check came to and was made out in the name of the vendor; that in 1928 the crop was sold and the check delivered to the vendor's agent; and that in 1929, there was a very small crop, which was entirely turned over to the defendant by the vendor. It thus appears that the evidence which it is claimed was excluded, was actually admitted, and no error appears although the evidence is not favorable to this contention of the defendant.

█ Upon the question of intent, it is next urged that the court erred in excluding testimony going to show the manner in which the defendant used the money he received in the sale of the raisins complained of, it being urged that

it was the intention of the defendant to show that all of the proceeds of this crop went into the care and improvement of the premises. Not only is this immaterial, since the defendant had agreed to take care of the premises, and had no right to use the vendor's money for that purpose, but the record shows no effort to prove this which was not permitted by the court. The only evidence to which our attention has been called, and so far as we can find, the only evidence which was offered along this line, is in one instance where no objection was made and where the defendant testified in answer to a question as to what he did with the proceeds of these raisins, ''I had a crop mortgage at the bank and I paid it.''

It is next urged that the payment for the year 1930 was not due at the time this complaint was filed. The defendant is not here charged with the failure to make any payment, but with disposing of an entire crop of raisins without having the right to do so.

Appellant next insists that if these crops were sold under a belief that they were his own property, he was then acting under a color of right and as a consequence, no criminal intent was shown. While he testified that Kenneson had given him the entire crop for the year 1930, there was evidence flatly contradicting this. This presented a question of fact and his testimony as to the reason why he sold the crop is not conclusive as to his intent. It was the duty of the court to consider the opposing testimony and all other evidence going to show the intent of the defendant, including the action of the defendant in mortgaging the crop for two years, and the subsequent sale by the defendant of the crop after it had been harvested, together with his failure to account for the proceeds. In addition, the court had before it the various stories told by the defendant as to what became of the crop. At one time he told the vendor's agent that he had moved the crop to the home of a friend who would sell it for him. At another time he stated he had sold it to a truck man. He first claimed the raisins were not sold and later admitted that they were, saying he had made the sale because he needed the money. There was also evidence that he misrepresented the quantity of raisins produced. Not only is the question of intent one of fact for the jury, or in this

case for the court (*People* v. *Tomlinson,* 102 Cal. 19 [36 Pac. 506]), but the intent may be inferred from all of the circumstances. (*People* v. *Smith,* 143 Cal. 597 [77 Pac. 449].) There being some evidence in support of the court's finding on the question of intent, it cannot be disturbed on appeal (*People* v. *Vaughn,* 25 Cal. App. 736 [147 Pac. 116]).

In the information filed the defendant was charged with the commission of grand theft. Although the defendant does not raise the point, the attorney-general cites authorities on the question as to whether the offense committed by the defendant was technically a larceny or an embezzlement. This question is one that it is not necessary to decide. Under the amendments of various sections of the Penal Code passed in 1927, the word "embezzlement" in the statute was changed to theft, and such an offense may now be prosecuted as a theft. The very purpose of these amendments was to meet a situation that had long been recognized. In *People* v. *Tomlinson, supra,* the court said: "On the *facts* there must often be a very narrow margin between cases of larceny, obtaining money by false pretenses, and embezzlement, because the character of the crime depends upon the secret intention of the parties, which is often difficult to ascertain; . . . "

As the court said in *People* v. *Plum,* 88 Cal. App. 575 [263 Pac. 862, 265 Pac. 322]: "The effect of section 484 of the Penal Code is that the former crimes of larceny, embezzlement and obtaining property by false pretenses are merged into the one crime of theft." ▮ Whether this defendant be considered as a custodian, mortgagee or bailee of these raisins, the vendor had both a property interest therein and the legal title thereto. In disposing of this property interest the defendant imposed a loss upon the vendor, and appropriated the proceeds of the property to his own use. In our opinion the evidence is sufficient to establish the offense of grand theft.

The judgment and order appealed from are affirmed.

Marks, J., and Jennings, J., concurred.