[Crim. No. 2385. Second Appellate District, Division One.—October 26, 1933.]

THE PEOPLE, Respondent, v. JOHN GILFORD VERNON ROLAND, Appellant.

Orbison & Irwin for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

HOUSER, J.—Under separate counts of an information filed against him, defendant was convicted of the crimes respectively of grand theft and petty theft. From the ensuing judgments, and from an order by which his motion for a new trial was denied, defendant has appealed to this court.

The essential facts connected with the offenses of which defendant was convicted are substantially as follows: Acting as a real estate agent, defendant effected an exchange of certain property which was owned by a Mr. and Mrs. Spencer. In such exchange, the property received by the latter was a bungalow court which was encumbered by a mortgage. In addition to the bungalow court, Mr. and Mrs. Spencer also were the owners of a small house and two lots. After the exchange was made, for a time defendant acted as agent for the Spencers in renting the bungalow court and collecting the rents due therefrom, etc.,—although by reason of his assertion that the expenses in operating the bungalow court exceeded the receipts derived from the collection of its rents, the Spencers never received any income from such source. Several weeks after the Spencers became the owners of the bungalow court they became alarmed over a threatened attempt by a former wife of Mr. Spencer to secure the payment to her of certain alimony which she claimed Mr. Spencer owed to her; and thereupon, at the suggestion of defendant, a deed was made by the Spencers to him of the bungalow

court and the house and two lots. At the same time defendant gave back to the Spencers a "blank" deed covering the same properties. Shortly thereafter, the Spencers removed from the city of Los Angeles, which up to that time had been the place of their residence, to the city of San Francisco; and after having been in the latter city for a period of about two months, during which time Mr. Spencer wrote two different letters to defendant by each of which he inquired concerning money which the former assumed had been collected by defendant on account of rents for the bungalow court, but received no reply. However, at about the expiration of said two months the Spencers received a telegram from defendant worded as follows: "Please meet me Monday or Tuesday at Southern Hotel in Bakersfield. Bring deed to lot and court deal. Very important. Wire me back at once when we can expect to be in Bakersfield. I will meet you there whenever you say. Important. Wire 1529½ West 7th Street." As a result of such telegram, a meeting between Mrs. Spencer and defendant took place at Bakersfield in Kern County. In the course of the conversation which occurred at that time and place between defendant and Mrs. Spencer, defendant stated (quoting Mrs. Spencer's testimony), as follows: "A. When Mr. Roland came in he said there was trouble down in Los Angeles, the former Mrs. Spencer was causing trouble; he said they had put an attachment on the court and he had to give his deposition in court the next day to show what he had given us for that property in Los Angeles, and he said he had been asked what he had given us and he said offhand—this is his words, Roland's words— Q. Tell us, proceed. A. Georgia acres, so he said, Mr. Roland said, 'I have some valuable land in Georgia that I will deed over to you temporarily' because Mr. Roland said it would be perjury and he would be liable to be sent to San Quentin if he did not show what he had given us for this property, so, I didn't know what else to do and I handed him over the deeds. . . . I gave Mr. Roland the blank deeds. . . . And in the meantime he went out; . . . When he returned . . . he gave me 220 acres in Georgia. . . . " In the Bakersfield conversation defendant also stated that he had a prospective exchange of the bungalow court for certain property located in Oakland. According to the testimony given by defendant at that time, he showed

Mrs. Spencer "the deed to the Georgia land", and explained to her "about what part of the state it was located"; that after she had agreed to take the land, "I (defendant) told Mrs. Spencer I would like to have a new deed made on the Georgia land, it would take me some few minutes to get that deed prepared. I left Mrs. Spencer in her room at the Southern Hotel and went out and found a notary. . . . I brought the deed notarized and signed on the Georgia land, before a notary. . . . I presented the deed to Mrs. Spencer in return for the deed—the names in blank—that I had signed over to blank, on the bungalow property and the Banning avenue property. . . . "

It should be noted that the "blank" deed which Mrs. Spencer returned to defendant at the Bakersfield meeting between the parties covered the bungalow court property only. "Probably a week or so" thereafter Mr. Spencer again wrote a letter to defendant,—"asked him about the income of the place, of the courts, and what he had done with the money and why we (Mr. and Mrs. Spencer) had not got some of it." Approximately one month after the Bakersfield meeting took place, defendant sent a telegram from Los Angeles to the Spencers at San Francisco by which he requested that the latter telephone to him. As a result of a telephonic conversation which was thus initiated pursuant to defendant's request, the Spencers sent "the papers" to the house and two lots to a brother of Mrs. Spencer, who lived in Los Angeles, who, at their request, delivered "the papers" to defendant; at which time, in substance, defendant told the brother of Mrs. Spencer that an attachment had been levied on the property in question and he had to "clear up the title"; also that a deal was pending on some Oakland property, and that defendant had given the Spencers a deed to the Georgia property "as a temporary proposition" until defendant could get the Oakland exchange consummated. During the ensuing several months, one conversation succeeded another between defendant and the Spencers regarding the reason why defendant never had remitted any money to the Spencers on account of rents collected by defendant for the bungalow court, as well as regarding the proposed exchange of the bungalow court for the Oakland property,—for the failure of each of which matters defendant assigned various reasons, until finally the Spencers demanded of de-

fendant the return by him to the Spencers of the deeds, etc., to the two properties in question. In response thereto defendant first stated that he would comply with the demand "on receipt of the Georgia land"; but later "he said he would not. He said he had given Georgia land for it and he intended to keep it. I (Mr. Spencer) asked him why, and he said the deal had been already made, that he was the owner of the property and had notified the tenants to that effect, and he refused to give it up at any price."

No question is raised by either of the parties to this appeal relative to the legality of either the conveyance of the property by defendant to the Spencers by means of a "blank" deed, or of its assumed reconveyance by the Spencers to defendant by virtue of the return of the "blank" deed by the former to the latter.

On the trial of the action, the conviction of defendant of any offense included in either count of the information was restricted to the crime of embezzlement of real property; and, in substance, the first point urged by appellant as a sufficient reason for a reversal of the judgment and the order in question is that by no provision of the statutes of this state may a conviction of the crime of grand theft be sustained where the gist of the accusation and the evidence show a larceny of real estate by embezzlement thereof.

By section 503 of the Penal Code, embezzlement is defined as "the fraudulent appropriation of property by a person to whom it has been entrusted"; and by the language expressed in section 484 of the Penal Code, by means of which the crime of theft is defined, to all practical intents and purposes the language of section 503 is carried into the latter statute. The history of the statute, generally recognized by the term "embezzlement", clearly indicates that originally it was not included within the crime of theft, but that the prevalence of the commission of acts which now constitute the offense required a special statute to remedy a frequent evil; and that at no time, or by no authority, was it applied or deemed applicable to the misappropriation of anything other than personal property. At once, therefore, it may be conceded that by the common law when the subject matter of the alleged misappropriation was that of real property by a person to whom it had been entrusted, the criminal offense, if

any, could not be that of embezzlement; and in consonance with well-established law, it is just as apparent that, in the absence of statutory provision by which such an offense is defined or denounced, the crime of embezzlement either of personal or of real property may not lawfully be charged. (Pen. Code, sec. 6; 7 Cal. Jur. 841, and authorities there cited; *People* v. *Whipple,* 100 Cal. App. 261 [279 Pac. 1008].)

In support of his contention that in this state a misappropriation of real property by a person to whom it has been entrusted cannot form a legal basis for a prosecution for the crime of embezzlement, appellant principally relies upon the authority contained in two cases decided respectively by the Supreme Court and by the District Court of Appeal of this state, to wit: *People* v. *Cummings,* 114 Cal. 437 [46 Pac. 284], and *People* v. *Folcey,* 78 Cal. App. 62 [247 Pac. 916]. Neither of such cases was founded upon an alleged embezzlement of real property, but each of them rested upon the alleged misappropriation of real property by means of false pretense. For at least the reason that at the present time the crime of obtaining money or property, "whether real or personal", by the use of "any false or fraudulent representation or pretense" is denounced by the provisions of a statute (sec. 532, Pen. Code), separate and distinct from the statute which relates to the crime of embezzlement,—the decision in neither of the cited cases is particularly applicable to the situation here presented. Furthermore, by the declared rule in the case of *People* v. *Rabe,* 202 Cal. 409 [261 Pac. 303], the principle of law stated in the cases to which reference has been had is overruled and a conclusion of law with relation to the fraudulent appropriation of real property by means of false pretense, contrary to that for which appellant contends, is positively announced. However, since the latter decision is rested upon the express provisions of section 532 of the Penal Code, as amended since the decision in *People* v. *Cummings,* 114 Cal. 437 [46 Pac. 284], was rendered, the reasoning in the case of *People* v. *Rabe, supra,* is not particularly apt as applied to statutes which are controlling in the instant case. See, also, *People* v. *Maddux,* 102 Cal. App. 169 [282 Pac. 996]. But in addition to the authorities cited by appellant, the case of *Manning* v. *State,* 175 Ga. 875 [166 S. E. 658], holds that under the

provisions of a statute "penalizing the fraudulent conversion of money *'or any other article or thing of value'* ", a charge of embezzlement of real property cannot be successfully maintained.

On the other hand, authorities in each of several other jurisdictions wherein a statute therein was either similarly phrased, or even of stronger import than that in force in the state of Georgia, and on which the last-cited case is based, hold that prosecution for obtaining real property by false pretenses or representations (as distinguished from embezzlement) may properly be maintained. In other words, that by a proper construction of the statute, by no felonious act amounting to theft may one be despoiled of his property, whether real or personal, without incurring the prescribed penalty. (See *Morse* v. *State,* 9 Ga. App. 424 [71 S. E. 699] ; *State* v. *Epo,* 131 Iowa, 619 [109 N. W. 119, 9 Ann. Cas. 856] ; *State* v. *Blake,* 36 Utah, 605 [105 Pac. 910] ; *State* v. *Toney,* 81 Ohio St. 130 [90 N. E. 142, 18 Ann. Cas. 395].) The point is that although in defining theft, the statute may not expressly denounce particular varieties of felonious acts which may result in defrauding one of real property, nevertheless, without such particularization, the language of the statute may be so broad or general in its nature that real property may be the subject of the offense. But from an additional standpoint, it may appear that the language of the statute itself which relates to the crime of embezzlement as a variety of theft was intended to include both real and personal property. As far as section 484 of the Penal Code purports in its essentials to define the crime of theft, it is as follows: ·

"Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor, or real or personal property, or who causes or procures others to report falsely on his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money or property or obtains the labor or service of another, is guilty of theft. . . . "

On even a casual inspection of its language, it will be observed that by the terms of the statute the crime of theft may be committed in each of several different, general ways, and as to each of which the subject of the offense is specified; that is to say, by the first specification, the stealing of *"personal* property" is denounced; by the second, the "fraudulent appropriation of *property"* is the subject of consideration; and by the third, the obtaining of *"real* or *personal* property" by false pretense is condemned. Were it not for the fact that at least as far as the definition of the variety of theft known as embezzlement is concerned, the provision now found in section 484 of the Penal Code relating to such crime is but a paraphrase of the original embezzlement statute (sec. 503, Pen. Code), by which such crime is defined, together with the principle of law announced or indicated in *People* v. *Cummings, supra,* it might satisfactorily appear that in section 484 of the Penal Code, by the use of the word "personal" as it related to ordinary acts of theft, and by the use of the words "real or personal" as they might affect the obtaining of property by false pretense, the employment of the broader term *"property"* in connection with the misappropriation by a person of anything which had been entrusted to him, would indicate the intention to include any and every kind or description of interest or estate which persons are qualified to possess. But considering the announced principle of law in the case of *People* v. *Carter,* 131 Cal. App. 177 [21 Pac. (2d) 129], that "the primary intention of the legislature in amending section 484 of the Penal Code in 1927 (Stats. 1927, p. 1046) was to consolidate into a statement of one criminal offense, consisting of each of several complete parts thereafter to be known as theft, the various criminal offenses theretofore known and recognized by the names of larceny, embezzlement and obtaining money or property by false pretense",—the application of the suggestion that by the references in section 484 of the Penal Code to the several different kinds of property which were made the subject of the respective varieties of theft, the assumed intention on the part of the legislature was to increase or to broaden the significance to be attached to the word "property", as used in the original embezzlement statute (sec. 503, Pen. Code) is much weakened, if not made en-

tirely negligible in effect. Then, too, the re-enactment of the statute in practically its original language, after the announcement of the decision in *People* v. *Cummings, supra,* might seem to indicate the intention to adhere to and accept as final and conclusive the construction of the statute placed thereon by the decision of the court in that case. However, it appears that another statute has a direct, important and positive bearing upon the situation. Subdivision 10 of section 7 of the Penal Code provides that "the word 'property' includes both real and personal property"; and although that statute was part and parcel of the penal laws of this state at the time when the decision in *People* v. *Cummings, supra,* was rendered, it nowhere appears that in reaching its conclusion therein the provision to which attention has been directed was given consideration by the court. More than that, an examination of all the briefs presented by the respective parties to the appeal therein fails to disclose the fact of the existence of such a statute. That the two statutes here under consideration are *in pari materia,* and consequently that in construing one, the provisions of the other are material cannot be questioned. In 23 California Jurisprudence, page 785, where many authorities are cited in its support, the rule is thus stated:

"In accordance with the principle that a statute is construed in connection with and as a part of the body of legislation upon the general subject, it is a settled rule that all statutes which relate to the same general subject-matter— briefly called statutes *in pari materia*—must be read and construed together, as one act, each referring to and supplementing the other, though they were passed at different times."

It is also a rule of construction of the statutes of this state that each of the provisions contained in the four codes should be construed with relation to all the other provisions thereof; in other words, that the entire body of the law should be regarded as a single statutory provision, and therefore within the rule that all parts of a statute should be construed together. (23 Cal. Jur. 601 et seq.; also, 797 et seq., and authorities there cited.)

If then, to the embezzlement portion of section 484 of the Penal Code, subdivision 10 of section 7 thereof be added, the necessary conclusion must be that real property may be

the subject of embezzlement; and such is the conclusion of this court.

Appellant's further contention that "the venue of the offenses as alleged in both counts of the information did not lie in Los Angeles county as alleged but in the county of Kern", is successfully met and overcome by the application to the facts of the provisions of section 781 of the Penal Code to the effect that "when a public offense is committed in part in one county and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, the jurisdiction is in either county."

Under the provisions of section 511 of the Penal Code, appellant urges the point that his conviction was "contrary to law". That part of the statute which is suggested as being here applicable is as follows:

"Upon any indictment for embezzlement, it is a sufficient defense that the property was appropriated openly and avowedly, and under a claim of title preferred in good faith, even though such claim is untenable."

Manifestly, the question of whether the facts adduced in evidence were such that it might be concluded that "openly and avowedly, and under a claim of title preferred in good faith", defendant appropriated the real property of the Spencers was one for the jury; and its determination with reference thereto, based upon substantial evidence, is conclusive upon this court. (*People* v. *Rose*, 71 Cal. App. 550, 556 [236 Pac. 158]; *People* v. *Ephraim*, 77 Cal. App. 29 [245 Pac. 769]; *People* v. *Hughes*, 79 Cal. App. 697 [250 Pac. 869]; *People* v. *Ailanjian*, 114 Cal. App. 260, 266 [299 Pac. 813]. See, also, *People* v. *Stafford*, 81 Cal. App. 159 [253 Pac. 183]; *People* v. *Tambara*, 192 Cal. 236 [219 Pac. 745].)

The record herein reveals the fact that, at the request of defendant, the jury was instructed in the exact words of such statute. In addition thereto and as a part of said instruction, the jury was instructed that: "If you find that property was appropriated, it is for you also to determine whether or not such appropriation was made openly and avowedly, and if so, whether the claim of title was preferred in good faith. If you have a reasonable doubt con-

cerning any element in the case, such doubt must be restored [resolved] in favor of defendant.''

It follows that, in regard to the point under consideration defendant has no just cause for complaint.

█ Appellant also complains that prejudicial error was committed by the trial court by its order wherein ''the court overruled appellant's oral application to file written application for probation''.

In that connection, the record herein shows that on the occasion when the question of whether defendant would be permitted to file an application for probation was under consideration considerable friction, or at least inharmony, existed between defendant and his counsel who then represented him; that although in behalf of defendant his counsel made such oral application to the trial court, defendant could not be induced or persuaded to do so. To the contrary, he persisted in refusing to make application for probation, but urgently insisted that he should be granted a new trial. The conduct of the trial judge was marked by patience and kindly consideration for defendant and his rights and privileges in the premises; and the final disposition of the question then before the trial court apparently resulted from the obstinate refusal of defendant to consider any situation other than such as might embrace an order by which he would be granted a new trial. Since the motion for new trial already had been regularly heard by the trial court and by it denied, no alternative other than the *pro forma* denial of the request to file an application for probation was available. As far as this court may discern from an examination of the record herein, the claims by appellant regarding the alleged arbitrariness of the trial court in the matter are wholly unfounded in fact; from which it follows that defendant's contention cannot prevail.

Since all other points presented by appellant for the consideration of this court are either expressly or impliedly covered by those already given consideration herein, it becomes unnecessary to devote further or special attention to them.

█ On the part of respondent, it is requested that in accordance with the provisions of section 1252 of the Penal Code, this court ''consider and pass upon'' certain rulings

made by the trial court by which each of several instructions offered by the People to be given to the jury was refused. All of such instructions apparently were offered on the theory that should the jury conclude that defendant was not guilty of embezzlement, still he might be lawfully convicted under the provisions of section 484 of the Penal Code which relate to the commission of theft from a person by obtaining from him "money, labor, or real or personal property" by means of "false and fraudulent representations or pretenses". But as hereinbefore may have been noted, on the trial of the action, by order of the trial judge, the prosecution was limited and restricted to the introduction of evidence by which the crime of embezzlement only might be established. Nor was evidence either received by the court, or offered by the prosecution, sufficient to support a judgment on the ground proposed to be covered by the instructions in question. Without going into details, it may suffice to indicate that in the opinion of this court such evidence as was received failed in several required essentials to show the commission of the crime known as obtaining money or property by false pretenses. In such latter situation, the action of the trial court in refusing to give such instructions or any of them to the jury was entirely proper.

The judgments and the order by which the motion for a new trial was denied are, and each of them is, affirmed.

Conrey, P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 23, 1933.